ORIGINAL

# In the United States Court of Federal Claims

No. 17-1016C

(Filed: January 12, 2018)

FILED
JAN 1 2 2018
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **PHILIP ABRAHAM PREMYSLER,** ) | Claim of breach of contract; prize |
| ) | competition under § 655 of the Energy |
| **Plaintiff,** ) | Independence and Security Act of 2007; |
| ) | subject matter jurisdiction |
| v. ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Philip Abraham Premysler, *pro se*, Davie, Florida.

Daniel B. Volk, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Chad A. Readler, Principal Deputy Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Plaintiff, Philip Premysler, seeks monetary and injunctive relief in a suit against the United States for harms arising from its breach of an implied contract allegedly arising from a prize competition. In May 2008, the United States Department of Energy ("DOE") issued the Bright Tomorrow Lighting Competition to encourage the development of a LED replacement for the traditional 60-watt incandescent lightbulb. The competition offered a $10,000,000 prize to the first successful entrant. Mr. Premysler became aware of and interested in the competition, and in January 2011, he began working with the New York State Energy Research and Development Authority ("New York Development Authority") to obtain funding to further develop a LED bulb respecting which he had previously submitted a patent application. Before he secured such funding, DOE announced that Philips Light North America had won the competition's prize as the first successful entrant. After the announcement, the New York Development Authority became skeptical of the viability of Mr. Premysler's development project because the prize had already been awarded. Mr. Premysler and the Authority reached an impasse soon thereafter—no funding was secured and Mr. Premysler never submitted an entry to the competition. Mr. Premysler filed the complaint in this case on July 27, 2017, alleging a

breach of an implied contract created by the prize competition *i.e.*, a contract between the United States and himself as a United States citizen interested in participating in the competition. He asserts that DOE breached the implied contract by awarding the prize to Philips, an allegedly ineligible entrant.

Pending before the court is the government's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 5. Mr. Premysler has responded in opposition to the government's motion. Pl.'s Opp'n, ECF No. 9. For the reason stated, the court grants the government's motion for dismissal.

## BACKGROUND

Pursuant to Section 655 of the Energy Independence and Security Act of 2007, Pub. L. No. 110-140, tit. VI, § 655, 121 Stat. 1492, 1700 (codified in relevant part at 42 U.S.C. § 17243), the Secretary of DOE "shall establish and award Bright Tomorrow Lighting Prizes for solid state lighting" "[n]ot later than [one] year after December 19, 2007." 42 U.S.C. § 17243(a). On May 28, 2008, consistent with the statute, DOE announced the Bright Tomorrow Lighting Competition. Compl. Ex. 1 (announcement of the Competion), at 1, 3. The competition was "intended to encourage development and deployment of highly energy efficient solid-state [lightbulbs] to replace several of the most common [lightbulbs] currently used in the United States," particularly "60-watt A19 incandescent and PAR 38 halogen incandescent [bulbs]." Compl. Ex. 1, at 3. DOE was especially interested in the creation of a viable LED replacement for the traditional 60-watt incandescent bulb. *See* Compl. ¶¶ 1-3; Compl. Ex. 2 (Competition, rev. 1), at 3. The agency offered a $10,000,000 prize to the first entrant that succeeded in achieving that goal. Compl. Ex. 1, at 3.

In January 2011, Mr. Premysler "submitted an application for funding to the New York State Energy Research and Development Authority for a project to develop [a] LED lightbulb" along the lines of the lightbulb addressed in a patent application he filed May 15, 2007. Compl. ¶ 24.[1] The proposal that Mr. Premysler submitted along with his application to the Authority requested $300,191 in funding. Compl. ¶ 24. The goal of the proposed project was to generate a lightbulb suitable for submission in DOE's competition. The Authority expressed interest in "pursuing the proposal" and, on August 2, 2011, sent Mr. Premysler an e-mail "that included a statement of work." *See* Compl. ¶¶ 25-26. The very next day, however, DOE announced that Philips Light North America had won the competition prize of $10,000,000 for developing a LED 60-watt replacement bulb. *See* Compl. ¶¶ 2-3. Subsequently, the Authority sent Mr. Premysler a "revised statement of work" in October 2011, and Mr. Premysler met with a representative of the Authority on February 24, 2012. Compl. ¶¶ 28-29. At that meeting, the representative of the Authority "repeatedly questioned the viability of [Mr. Premysler's] . . . project in view of the fact that the [competition prize] had been awarded to Philips." Compl. ¶ 29 (emphasis omitted). Thereafter, Mr. Premysler and the Authority "reached an impasse" as to

---

[1] Based upon Mr. Premysler's patent application, U.S. Patent No. 8,680,754 was ultimately issued on March 25, 2014. *See* Compl. Ex. 11.

2

Mr. Premysler's funding application. Compl. ¶ 29. Mr. Premysler never submitted an entry to the competition. *See* Def.'s Mot at 2.

Mr. Premysler filed the complaint in this case on July 27, 2017, alleging that Philips was an ineligible entrant and that by improperly awarding Philips the competition prize DOE had contravened "an implied contract between the United States and . . . United States citizens interested in fairly participating in the competition." *See* Compl. at 2. This breach harmed Mr. Premysler, in his view, because the improper award to Philips led to "an impasse" with the New York Development Authority and prevented him from securing the funding necessary to further develop the lightbulb covered by his patent application and enter the competition. *See* Compl. ¶¶ 24-29. As a remedy for this harm, Mr. Premysler requests that the award to Philips of the $10,000,000 prize be rescinded, that the prize be awarded to him "for [his] patented LED lightbulb," that he be compensated in the amount of $300,191, the amount he "would have received from [the New York Development Authority]," and any "other compensation . . . the court may see fit" to grant him. Compl. ¶¶ 31-34.

## STANDARDS FOR DECISION

In any action, the plaintiff has the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). When ruling on a motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The leniency afforded to a *pro se* plaintiff with respect to formalities does not relieve such a litigant from satisfying jurisdictional requirements. *Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act provides this court with jurisdiction over "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). There is a low bar for establishing subject matter jurisdiction over such contract claims. *See Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("[J]urisdiction under [the Tucker Act] requires no more than a non-frivolous *allegation* of a contract with the government.") (emphasis in original) (citing *Lewis v. United States*, 70 F.3d 597, 602, 604 (Fed. Cir. 1995); *Gould, Inc. v. United States*, 67 F.3d 925, 929-30 (Fed. Cir. 1995)). "The general rule is that so long as the plaintiffs have made a non-frivolous claim that they are entitled to money from the United States . . . because they have a contract right, this court has jurisdiction to settle the dispute." *Anchor Tank Lines, LLC v. United States*, 127 Fed. Cl. 484, 493 (2016) (citing *Adarbe v. United States*, 58 Fed. Cl. 707, 714 (2003)) (additional citations and internal quotation marks omitted).

## ANALYSIS

Mr. Premysler alleges that the competition created an implied contract between DOE and him, as a U.S. citizen interested in entering the competition. *See* Compl. at 2 ("[The competition] established an implied contract between the United States and . . . United States citizens interested in fairly participating in the competition . . . [,] including [Mr. Premysler]."). "The general requirements for a binding contract with the United States are identical for both

3

express and implied contracts. The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citations omitted). Moreover, "[i]t is settled law that entrants to a contest are bound by . . . a contract." *Frankel v. United States*, 122 Fed. Cl. 287, 290 (2015) ("*Frankel I*"), *aff'd*, 842 F.3d 1246 (Fed. Cir. 2016) ("*Frankel II*"). "[C]ourts have long interpreted announcement of a contest as a contractual offer by a sponsor and entry into the contest by a contestant as acceptance of that offer." *Frankel II*, 842 F.3d at 1250 (citations omitted).

The government asserts that no contract, implied or otherwise, could have been formed "because Mr. Premysler never submitted an entry for the competition," citing *Frankel II* for that proposition. Def.'s Mot. at 3-4. Mr. Premysler claims that the instant case is distinguishable from *Frankel II* because, unlike the "Robocall Challenge" contest at issue there, the DOE competition had "no fixed deadline" for submission of entries. Pl.'s Opp'n at 1 (emphasis omitted); *see also Frankel II*, 842 F.3d at 1248-49. DOE's rules for the competition stated that it "w[ould] remain open until one winner . . . and two additional qualifiers are declared in each category, or until 24 months have elapsed since the winning award in a given category, whichever comes first." Compl. Ex. 2, at 8-9. Mr Premysler claims that this case should be treated differently than *Frankel II* because here the DOE's improper award to Philips "prematurely cut off" Mr. Premysler's "opportunity . . . to submit an entry and win the monetary prize." Pl.'s Opp'n at 1 (emphasis omitted).

Mr. Premysler's argument is ultimately unconvincing. This court can only exercise jurisdiction where there is at least a non-frivolous allegation of a contract with the government. *See Engage Learning*, 660 F.3d at 1353. Respecting his assertion that he entered into an implied contract with the United States, *see* Compl. at 2, Mr. Premysler fails to allege that he ever submitted an entry to the competition and thereby accepted the government's open offer. Def.'s Mot. at 2; *see also* Def.'s Reply in Support of Its Mot. to Dismiss ("Def.'s Reply") at 1, ECF No. 10. As noted previously, it is an entry to an announced competition that functions as an acceptance, and an expression of interest in or intent to enter the competition is insufficient. *See Frankel II*, 842 F.3d at 1250. Absent such an acceptance, there can be no contract and, *a fortiori*, there is no jurisdiction. Even if the nature of the deadline were relevant, the facts as alleged by Mr. Premysler do not indicate that the timing of DOE's deadline is what prevented him from submitting an entry. Rather, it was his inability to secure funding to further develop the lightbulb covered by his patent application. Under the facts set out in his complaint, Mr. Premysler had two years, *i.e.*, until August 3, 2013, to submit his entry and accept the government's offer after DOE announced the award to Phillps as the winner of the competition. *See* Compl. ¶ 3; Compl. Ex. 2, at 8-9. He failed to do so.

In their briefing, the parties have touched on whether the DOE competition can fairly be understood as a procurement enabling Mr. Premysler to challenge the award of the competition prize to Philips as a bid protest "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In *Frankel II*, however, the Federal Circuit determined that Congress viewed prize competitions as distinct from "[procurement] contracts, grants, and cooperative agreements," and therefore contracts relating to the Robocall Challenge contest were not procurement contracts. *Frankel II*, 842 F.3d at 1251 (applying 15 U.S.C. § 3719, the general

4

federal statute pertinent to federal prize competitions). "Whether a government contract is a procurement contract is a legal question of statutory interpretation." *Frankel II*, 842 F.3d at 1250 (citing *Wesleyan Co. v. Harvey*, 454 F.3d 1375, 1378 (Fed. Cir. 2006)). The only different statutory element in this case is derived from the Energy Independence and Security Act of 2007, and Section 655 of the Act contains no language that indicates Congress' intent that the DOE competition be treated differently than any federal prize competition conducted under 15 U.S.C. § 3719. Therefore the Federal Circuit's holding in *Frankel II* applies with equal force here. The DOE competition cannot be fairly considered a procurement, and this court does not have jurisdiction over Mr. Premysler's challenge to awards made in connection with it.

## CONCLUSION

For the reasons stated, the government's motion to dismiss Mr. Premysler's complaint is GRANTED. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

Charles F. Lettow
Judge